IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MUSARRAT MASOOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 11 C 7551 |
| | ) | |
| v. | ) | Judge Ronald A. Guzmán |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Musarrat Masood seeks judicial review of a final decision of the Commissioner of Social Security that she was not entitled to a period of disability and disability insurance benefits ("DIB") under the Social Security Act as amended. 42 U.S.C. §§ 416(i), 423. Both parties move for summary judgment. For the reasons stated below, the motions are granted in part and denied in part. The case is remanded to the Social Security Administration for proceedings consistent with this order.

**I.    Facts**

Plaintiff filed an application for DIB on December 16, 2008, alleging a disability onset date of July 29, 2008. (AR 87.)[1] Her application was denied initially, upon reconsideration, and following a hearing by an administrative law judge ("ALJ"). (*Id*. 90, 111, 116.) The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (*Id*. 1, 7.)

Plaintiff was 52 years old at the time of the ALJ's decision. (*Id*. 10, 59.) Her past

---

[1] Citations to "AR" refer to the administrative record in this case.

relevant work includes positions as a cashier and stock clerk at a Salvation Army thrift store. (*Id.* 46, 80-81.) Plaintiff stopped working in 2008. (*Id.* 63.) She has been diagnosed with Major Depression and Generalized Anxiety Disorder. (*Id.* 452, 579.) After the hearing, which occurred on two different days, July 8, 2010 (*id.* 54) and April 8, 2011 (*id.* 8), the ALJ issued a decision on May 20, 2011 denying Plaintiff's claim. (*Id.* 90.) According to the ALJ, Plaintiff's impairments preclude her from performing her past work, but would not preclude her from performing light unskilled work. (*Id.* 97, 100.)[2]

## II.     Analysis

### A.     Relevant Law

The Social Security Act, 42 U.S.C. § 405(g), authorizes judicial review of the Commissioner's final decision to determine "whether the record as a whole contains substantial evidence" to support that decision and whether the Commissioner committed an error of law. *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Although a claimant has the burden to prove disability, the ALJ has a duty to develop a full and fair record. *Nelms v. Astrue,* 553 F.3d 1093, 1098 (7th Cir. 2009). The Court reviews the ALJ's decision *de novo* but gives deference to any factual findings. *Prochaska v. Barnhart*, 454 F.3d 731, 734 (7th Cir. 2006).

The Social Security regulations set forth a five-step sequential evaluation process for the ALJ's determination of whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4). The ALJ

---

[2] Plaintiff filed a new application for Social Security benefits in June 2011 and in a decision dated January 19, 2012, the Social Security Administration found Plaintiff disabled as of May 2011. (Dkt. # 17-1.)

must determine: (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant's alleged impairment or combination of impairments is severe; (3) whether any of the claimant's impairments meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) whether the claimant is unable to perform his past relevant work; and (5) whether the claimant is unable to perform any other work existing in significant numbers in the national economy. *Id.* A finding of disability requires an affirmative answer at either step three or step five, while a negative finding at any step other than step three precludes a finding of disability. *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008).

      B.      <u>Did ALJ commit legal error in weighing medical evidence</u>?

An ALJ shall "always give good reasons . . . for the weight given to a treating physician's opinion," 20 C.F.R. § 416.927(d)(2), and if the ALJ chooses to reject a treating physician's opinion, she "must provide a sound explanation for that rejection." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011).

Plaintiff's treating psychiatrist, Dr. Elena Tylkin, filled out a mental impairment questionnaire on November 28, 2009, in which she indicated that Plaintiff's symptoms included disturbance in mood, difficulty concentrating, easy distractability, panic attacks, somatic complaints, sleep disturbance, and decreased energy. (AR 453.) Dr. Tylkin characterized the severity of Plaintiff's limitations as follows: (1) Restrictions of activities of daily living – marked; (2) Difficulties maintaining social functioning – marked; and (3) Difficulties maintaining concentration, persistence and pace – marked. (*Id.*) With respect to Plaintiff's mental residual functional capacity analysis, Dr. Tylkin indicated that Plaintiff was moderately

3

limited in her ability to understand, remember and carry out work-like procedures and ability to understand, remember and carry out very short and simple instructions. (*Id*. 454.) With respect to 17 other "mental activities for even unskilled competitive employment," including ability to remember and carry out detailed instructions, ability to maintain a schedule and regular attendance, ability to complete a normal workday without interruptions from psychologically-based symptoms, and ability to respond appropriately to changes in a work setting, Dr. Tylkin indicated that Plaintiff was markedly limited. (*Id*.)

The ALJ credited the findings of Dr. Ellen Rozenfeld, who neither examined nor treated Plaintiff, but reviewed the evidence presented by Plaintiff in support of her claim for disability and testified at Plaintiff's hearing. (*Id*. 563-74.) Dr. Rozenfeld concluded that Plaintiff had moderate limitations in social functioning and in concentration, persistence and pace.

The ALJ gave Dr. Tylkin's assessment "little weight" as "inconsistent with the majority of the evidence." (*Id*. 100.) While the ALJ did not point to any record evidence in support immediately following the statement, earlier in her decision the ALJ noted that "while Dr. Tylkin assessed marked limitations in terms of work-related functioning, as noted by Rozenfeld, the claimant stabilized and then improved with treatment." (*Id*. 99.) In support, the ALJ points out that in addition to her treatment with Dr. Tylkin, Plaintiff had "sessions with various county mental health technicians and, as of October 2009, acknowledged that she was feeling better and that her mood was good." (*Id*.) In addition, the ALJ noted that as of July 2010, Plaintiff denied any lack of focus or concentration and was feeling and sleeping better despite daytime drowsiness. (*Id*.) Moreover, the ALJ stated that Dr. Tylkin had seen Plaintiff "three times at most" prior to filling out the mental impairment questionnaire discussed above. (*Id*. 96.)

4

Plaintiff argues that the ALJ cherry-picked and ignored evidence contrary to Dr. Rozenfeld's statement that "the claimant stabilized and improved with treatment." (*Id*. 99.) However, Dr. Rozenfeld's statement (*id*. 573) was made with respect to what symptoms Plaintiff was reporting in March and April of 2010, which accurately reflect the patient's medical records. (*Id* 522.) The fact that the ALJ did not mention particular notes regarding the state of Plaintiff's mental health in 2009 and on July 10, 2010, the day before Plaintiff's first hearing, when issuing her decision in May 2011 does not mean that she cherry-picked evidence. *Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002) ("[A]n ALJ need not address every piece of evidence in h[er] decision" so long she builds a bridge between the evidence and her conclusion). This is particularly true because the ALJ cited to a July 19, 2010 progress note from a visit with Dr. Tylkin in which the doctor noted that Plaintiff was "cooperative" and "pleasant" and indicated that she is "feeling better on the medication but is experiencing drowsiness during the day." (AR 524.) The Court concludes that the ALJ did not improperly cherry-pick the evidence.

Plaintiff asserts that an assessment by another physician, Dr. Amdur, supported the findings of Dr. Tylkin. However, the ALJ also gave Dr. Amdur's assessment "little weight" because "[Dr. Amdur] found testing administered in English to an individual with a language barrier valid and sufficient for a finding of marked impairment." (*Id*. 100). In addition, the ALJ noted that while Dr. Amdur also diagnosed a cognitive disorder or learning disability (*id*. 99), Dr. Rozenfeld testified that the "mental status evaluations throughout the record consistently denote intact cognition." (*Id.*) Moreover, the ALJ noted that Plaintiff's treaters at Community Counseling Centers of Chicago indicated in January 2009 that Plaintiff's cognitive functioning was intact. (*Id.* 410.) Finally, the ALJ concluded that Plaintiff's "ability to perform a general

5

range of ADLs [activities of daily living] contradicts Dr. Amdur's opinion of a significant cognitive impairment." (*Id*. 100.) Thus, the ALJ adequately supported her decision to afford Dr. Amdur's assessment little weight.

      C.      <u>Did the ALJ pose an improper hypothetical to the vocational experts</u>?

Plaintiff next contends that the ALJ erred by posing an improper hypothetical to the vocational expert. "When an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by medical evidence in the record." *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). The Seventh Circuit has rejected the position that the ALJ properly accounts for "limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the general public." *Id*. at 685. Rather, any hypothetical must account for claimant's "documented limitations" of concentration, persistence and pace. *Id*. at 684.

Here, the ALJ found that Plaintiff had a moderate limitation in concentration, persistence and pace, and asked the vocational experts whether jobs existed if she restricted the hypothetical person to "simple and unskilled" jobs that have "no sustained general public contact," no "joint tasks with co-workers," and "no multiple changes." (AR 47, 81.) Other than the addition of "no multiple changes," the hypothetical in this case is exactly the one that the Seventh Circuit has concluded is insufficient. *Stewart*, 561 F.3d at 684. The government's attempt to distinguish the relevant Seventh Circuit caselaw on the ground that those cases use the conjunctive while the ALJ's finding here was in the disjunctive (*i.e*., concentration, persistence *or* pace) is baseless. Because the ALJ failed to properly delineate Plaintiff's limitations in her hypothetical to the vocational expert, the case must be remanded.

6

D.   Credibility

Plaintiff next claims that the ALJ made an improper credibility determination.  The Court will overturn a credibility finding only if it is "patently wrong." *Prochaska,* 454 F.3d at 738 (7th Cir. 2006).  Credibility determinations are governed by SSR 96–7p, which requires the ALJ to evaluate, in light of all of the evidence, "the intensity, persistence and functionally limiting effects" of a claimant's symptoms and the extent to which they affect her ability to work.  SSR 96–7p, 1996 WL 374186, at *1–2 (S.S.A. July 2, 1996).

Plaintiff first challenges the use of the following statement by the ALJ:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(AR 98.)  The Seventh Circuit recently referred to this same language as "meaningless boilerplate" and strongly criticized its use, noting that the government's lawyer admitted at oral argument that he did not know what it meant, and suggested that the Social Security Administration "take a close look at the utility and intelligibility of its 'templates.'" *Bjornson v. Astrue*, 671 F.3d 640, 644–45 (7th Cir. 2012).

Plaintiff contends that the ALJ erred in using this language and deciding that Plaintiff could not work before considering her credibility.  Plaintiff further argues that the ALJ's statement that Plaintiff's impairments could be expected to cause "some" of her alleged symptoms is vague because the ALJ does not explain which of the symptoms are credible and which are not.  As noted by the government, the Seventh Circuit's criticism goes to the use of the boilerplate language in place of a credibility determination based on the record evidence.

7

*Richison v. Astrue*, 462 Fed. Appx. 622, 625 (7th Cir. 2012) ("We have derided this sort of boilerplate as inadequate, *by itself*, to support a credibility finding.") (emphasis added). Here, the ALJ stated that:

> In terms of the claimant's credibility, the undersigned notes that, despite an alleged inability to sit for more than half an hour, the claimant initially acknowledged that she could sit for two hours without interruption. Moreover, she sat through the 1 1/4 hour supplemental hearing with no obvious difficulty. She claims to be overwhelmed by anxiety, but is capable of performing ADLs and going to the gym several times a week.

(AR 100.) Moreover, the ALJ summarized Plaintiff's medical history with citations to the record and discussed why the medical evidence did not support the claimant's statements regarding the persistence and limiting effects of her symptoms. The ALJ also identified the symptoms she found to be not credible. The Court cannot conclude that the ALJ's credibility determination was patently wrong. *Richison*, 462 Fed. Appx. at 625-26 ("By explaining which of [the claimant's] statements he did not credit and why, the ALJ provided a sufficient basis for his credibility assessment.").

### III. Conclusion

For the reasons stated above, the parties' motions for summary judgment [16-1, 22-1] are granted in part and denied in part. The case is remanded to the Social Security Administration for further proceedings consistent with this order.

**ENTER**:

**March 15, 2013**

                                          **Ronald A. Guzman**
                                          **United States District Judge**